LOEFFLER, Appellant,

v.

LOEFFLER, Appellee.

[Cite as *Loeffler v. Loeffler*, 167 Ohio App.3d 737, 2006-Ohio-3060.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–05–034.

Decided June 16, 2006.

Arnold N. Gottlieb, for appellant.

Max E. Rayle, for appellee.

SINGER, Presiding Judge.

{¶ 1} This is an appeal from a post-divorce-decree order issued by the Wood County Court of Common Pleas. Because we conclude that the trial court acted within its discretion in fashioning an award of marital property, we affirm that portion of its decision. We vacate the court's treatment of taxes on the award as speculative.

{¶ 2} Appellee, William R. Loeffler, and appellant, Carol A. Loeffler, were married on February 17, 2000. The couple separated during the summer of 2002, shortly before appellant initiated the divorce action that underlies this appeal. Although the trial on the matter was held on July 23, 2003, the magistrate's decision was not issued until May 18, 2004.

{¶ 3} During the marriage, appellee entered into an employment agreement to be chief operating officer of a manufacturing company, beginning in January 2001, for a three-year period. Nevertheless, appellee's employer terminated his employment in August 2001, only seven months into its contracted term. On August 9, 2002, appellee sued his employer, alleging, inter alia, a breach of his employment contract and defamation resulting in damages to his reputation. The suit was pending concurrent with the parties' divorce action.

{¶ 4} In addressing the possibility of an award in the employment suit, the divorce magistrate ordered that appellant "be entitled to receive any appropriate award as a spouse from [appellee's] law suite [sic] against his former employer as determined by that particular law suit [sic]." Neither party appealed the magistrate's decision.

{¶ 5} At an August 24, 2004 settlement conference on the employment case, appellee and his employer agreed in principle on payment of an amount to settle the suit. Counsel for the parties were left to draft the agreement.

{¶ 6} On August 26, 2004, appellant filed a notice of garnishment on appellee's former employer, seeking to attach "litigation settlement proceeds" in an amount "to be determined by the Domestic Relations Court." Following a garnishment

hearing at which appellee denied that appellant was due any proceeds from the settlement, the court clarified its decree:

{¶ 7} "The court will clarify its final judgment entry of divorce. [Appellant] is entitled to 50% of [appellee's] award or settlement proceeds of the [employment] Litigation that are attributable to loss of compensation and benefits. The final judgment in the [employment] Litigation or the settlement agreement between [appellee] and [his employer] will be looked to first to determine the amount of proceeds attributable to the loss of compensation and benefits. In the event that the judgment or the settlement agreement does not distinguish between amounts attributable to the loss of compensation and benefits and the amounts attributable to loss of reputation, this court will deem the entire amount attributable to loss of compensation and benefits."

{¶ 8} On December 27, 2004, appellee and his former employer entered into a formal written settlement agreement that divided the total sum agreed upon into two payments: the first representing half the total and allocated to the "loss of compensation and benefits claims," the second "attributable to the loss and damage to reputation claim."

{¶ 9} In this matter, following additional hearings and argument, the trial court found that the portion of the employment settlement attributable to damage to reputation was a compensation for personal injury and was, therefore, appellee's separate property: only the portion of the settlement for loss of compensation and benefits was marital property. See R.C. 3105.171(A)(6)(a)(vi). The court concluded that appellant was entitled to half of this sum, but only after deducting proportional attorney fees and costs. Moreover, the court ruled, since the settlement award represented money in lieu of compensation that would have otherwise been paid out over a period of 29 months, some of which was after the termination of the parties' marriage, appellant's award should be adjusted pro rata to compensate her only for the amount that would have been earned during the marriage. The court set the date that appellee filed a counterclaim for divorce as the date of the end of the marriage. Additionally, the court deducted estimated proportional federal income tax, awarding appellant a net sum of $8,306.99.

{¶ 10} From this order, appellant now appeals, setting forth the following single assignment of error:

{¶ 11} "The trial court made an improper marital property allocation of litigation settlement proceeds."

{¶ 12} In support of her assignment of error, appellant advances three arguments: (1) the whole of the employment settlement should have been marital

property, (2) the trial court miscalculated the duration of the marriage, and (3) the trial court's income tax adjustment was improper.

## I. Agreement in Principle

{¶ 13} Appellant insists that what appellee refers to as an "agreement in principle," settling the employment suit on August 24, 2004, was an oral contract between appellee and his former employer. Since this agreement contained no attribution of funds to any specific cause of action, appellant reasons, the whole of the settlement amount should be marital property subject to division. It was not, appellant notes, until after the garnishment hearing at which the court issued its "clarification" that appellant even requested division of the settlement into separate "compensation" and "reputation" sums.

{¶ 14} In support of her position, appellant called counsel for appellee's former employer, who testified that no request for allocating funds was made until the third draft of a written agreement was produced several months after the original settlement conference. Indeed, according to appellee's former employer's counsel, appellee had dismissed the defamation cause of action before the settlement conference.

{¶ 15} The trial court rejected appellant's position, finding that the final settlement contract violated neither the court's prior orders nor the law. The court also found that the final written agreement unambiguously allocated the settlement proceeds: half to compensation, which would be marital property, and half to "damages to reputation," which would be appellee's separate property.

{¶ 16} Appellant does not really challenge these conclusions. Rather, she maintains that there was no need to construe the written contract, because the oral contract was already binding. In support of this point, appellant cites cases for the proposition that an oral settlement agreement constitutes a binding contract: *Noroski v. Fallet* (1982), 2 Ohio St.3d 77, 2 OBR 632, 442 N.E.2d 1302; *Zigmont v. Toto* (1988), 47 Ohio App.3d 181, 547 N.E.2d 1208. Neither of these cases is persuasive.

{¶ 17} *Zigmont* stands for the proposition that an in-court settlement, made in open court and read into the record, is binding. There is nothing in the record that suggests that the settlement between appellee and his former employer was read into the record. Indeed, it is undisputed that the agreement was not complete and that both parties anticipated that a final settlement contract would be in writing.

{¶ 18} *Noroski* seems to imply that a recorded telephone conversation can create an agreement. What *Noroski* clearly states, however, is that in order to form a valid oral contract, there must be an offer and acceptance, accompanied by a meeting of the minds of the parties. Id. Each of the draft settlement

agreements contains a clause providing for a seven day right of revocation and provides further that "[t]he Agreement is not effective until this revocation period has expired." In our view, this provision indicates an understanding between appellee and his former employer that no contract be formed until after execution of the written settlement. Consequently, there was no meeting of the minds between the parties that the oral settlement be a contract and the trial court did not err in limiting its consideration to the written agreement.

## II. Pro Rata Settlement

{¶ 19} In her second argument, appellant complains that the trial court had neither a factual nor legal basis to prorate the division of the compensation award. According to appellant, appellee was both hired and fired within the duration of the marriage; therefore, any cause of action appellee had on the employment contract accrued during the marriage. Consequently, appellant insists, she was entitled to a share of the full settlement amount. Moreover, appellant maintains, even if proration is proper, the trial court set an improper, or at least inconsistent, valuation date when it set the date of appellee's counterclaim for divorce as the end date of the marriage with respect to the employment settlement.

{¶ 20} Appellee's argument, the one ultimately accepted by the trial court, was that the employment compensation settlement constituted damages for a breach of the employment contract. The employment contract at issue ran from January 16, 2001, until December 30, 2003: a period of 35.5 months. Appellee was paid on the contract until September 1, 2001, seven and one-half months into the contract. Thus, the settlement represents payment in lieu of contract wages over a 28–month period.

{¶ 21} The "marital property" subject to division in a divorce includes only that property acquired "during the marriage." R.C. 3105.171(A)(3). The court deemed the end of the marriage for valuing this asset as September 26, 2002, the date of appellee's counterclaim for divorce. From September 1, 2001, until September 26, 2002, is a 13–month period. Consequently, appellee was entitled to half of 13/28 (46.4 percent) of the employment-settlement compensation, less a proportionate share of legal fees and litigation expenses: $12,419.65.

{¶ 22} The equitable division of marital property is within the sound discretion of the court and will not be reversed absent an abuse of that discretion. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597. The same standard applies to a court determination of a date for the end of a marriage. *Bowen v. Bowen* (1999), 132 Ohio App.3d 616, 631, 725 N.E.2d 1165. An abuse of discretion is more than an error of law or mistake of fact; the term connotes an attitude by the court that is arbitrary, unreasonable or unconscionable. *Blake-*

*more v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. The classification and valuation of property as marital or nonmarital is a determination of fact, which will not be disturbed on appeal as long as it is supported by some competent, credible evidence. *James v. James* (1995), 101 Ohio App.3d 668, 684, 656 N.E.2d 399; *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989; *C. E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 23} Everyone agrees that some portion of the eventual settlement award should be classified as marital property. The trial court concluded that only the portion of the award that represents what would have been income during the marriage, had the contract been honored, should be marital property. This is a reasonable determination, based on facts for which there is competent, credible evidence.

{¶ 24} The trial court concluded that the de facto date of the end of the marriage for this couple was when appellee filed his counterclaim for divorce. That was the point at which it appears that both parties evidenced the irreconcilability of the marriage. Again, we conclude that this determination was neither arbitrary, unreasonable, nor unconscionable. Consequently, the trial court acted within its discretion in prorating the settlement, awarding that portion that would have been earned during the marriage.

### III. Tax Implications

{¶ 25} In her remaining argument, appellant contests the trial court's treatment of the issue of federal income tax on the distribution of the employment settlement award to her. Appellant maintains that the court should not have considered tax consequences, which were essentially speculative. Moreover, appellant contends, even if the court properly reached the tax issue, it improperly applied its tax formula to the gross award rather than the net award.

{¶ 26} R.C. 3105.171(F)(6) directs that a court dividing marital property consider the "tax consequences of the property division upon respective awards to be made to each spouse." Nevertheless, courts need not consider tax consequences that are speculative. *James v. James,* supra, 101 Ohio App.3d at 688, 656 N.E.2d 399; *Syslo v. Syslo,* 6th Dist. No. L–01–1273, 2002-Ohio-5205, 2002 WL 31166937, at ¶ 72.

{¶ 27} Using a 2004 Tax Rate Schedule from the Internal Revenue Service, the trial court found that the federal tax rate applicable to the whole of the employment settlement was 21.487 percent. Applying this rate to appellant's gross award of $19,151.79, the court computed that appellant's proportional tax burden would be $4,112.66.

{¶ 28} The court reasoned that since the transfer of funds to appellant would be a nontaxable event and that appellee would be required to pay tax on the whole award, as ordinary income, appellant should bear a proportional tax burden. The court then deducted $4,112.66 from appellant's net award of $12,147.65, resulting in a final award of $8,306.99.

{¶ 29} We note, without fear of contradiction, that the federal income tax system is complicated—more complicated than simply applying a tax rate to an income figure. Many factors come into play in determining a taxpayer's final liability, including the potential deductibility of attorney fees and litigation costs. Accordingly, absent some more definitive testimony as to what the actual tax liability is or was on the employment-settlement award, we must conclude that the tax liability computed here was too speculative to form the basis for an award.

{¶ 30} Accordingly, appellant's sole assignment of error is well taken in part.

{¶ 31} On consideration whereof, the judgment of the Wood County Court of Common Pleas is affirmed in part and reversed in part. The trial court's deduction of pro rata income tax from her award of the employment settlement is vacated and the matter is remanded to the court for further consideration consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.

Judgment affirmed in part<br>and reversed in part.

PIETRYKOWSKI and PARISH, JJ., concur.